UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YULY KROYTOR,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Respondent. | No. 2:03-cr-00379-JAM-CKD-1<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Currently pending before the court is petitioner's motion for a writ of error coram nobis. The motion has been fully briefed by the parties and for the reasons that follow, the undersigned recommends denying petitioner's coram nobis application.

**I.　　Factual and Procedural Background**

Petitioner is a lawful permanent resident (LPR)[1] of the United States who pleaded guilty to Health Care Fraud on September 24, 2003.[2] ECF No. 7-8. He was sentenced on February 18, 2005 to 12 months of probation which included five months in a halfway house. ECF No. 25 (Judgment and Commitment Order). Petitioner completed his sentence, including the payment of

---

[1] Although born in Moldova, petitioner is a Canadian citizen. ECF No. 37-1 at 1 (Declaration of Yuly Kroytor). He entered the United States in 1991 and adjusted his status to a lawful permanent resident in 1995. Id. at 1-2.

[2] As part of his guilty plea, petitioner agreed "to waive his right to make any collateral attack on any aspect of the proceedings, including sentencing." ECF No. 37-7 at 3 (plea agreement).

1

restitution and probation, and was placed in immigration removal proceedings in February 2008 based on his felony conviction sustained in this court. See ECF No 37 at 13, 14

On May 9, 2016, petitioner filed a coram nobis petition seeking to vacate his felony conviction based on counsel's affirmative misrepresentation about the immigration consequences of his fraud conviction after he pled guilty but before he was sentenced. ECF No. 37. Since petitioner is not challenging the validity of his guilty plea nor the effectiveness of the lawyer who represented him during plea proceedings, the court will refer to petitioner's allegations hereinafter as a challenge to post-plea counsel's advice about the immigration consequences of his conviction. Petitioner and his post-plea counsel both filed declarations indicating that petitioner was advised that the immigration authorities would not find out about his conviction if he paid restitution prior to sentencing and was placed on probation without any actual jail time. ECF No. 37-1 at 5 (Declaration of Petitioner); see also ECF No. 37-8 at 2 (Declaration of Post-Plea Counsel). This misrepresentation rises to the level of ineffective assistance of counsel in violation of the Sixth Amendment and is therefore an error "of the most fundamental character" justifying coram nobis relief, according to petitioner.[3] ECF No. 37 at 17-18. Petitioner asserts that had this attorney told him that his conviction would lead to his deportation and separation from his family, he would have asked to withdraw his guilty plea and would have directed his attorney "to try to negotiate a plea bargain that would have avoided the immigration consequences…. If a different plea could not have been negotiated," then petitioner would have taken the case to trial. ECF No. 37-1 at 8-9. As a remedy for the Sixth Amendment violation, petitioner seeks to have his felony conviction vacated and plead anew to misprision of a felony in

////

---

[3] Although petitioner also describes his plea attorney's failure to discuss the immigration consequences of pleading guilty even though this attorney was aware that petitioner was not a citizen, the legal basis for coram nobis relief is limited to allegations against post-plea counsel. See ECF No. 37 at 17; ECF No. 37-1 at 3. Petitioner "cannot attack [plea counsel's] representation because [he] gave him no immigration advice at all and counsel's duty to advise a noncitizen client about the immigration consequences of a guilty plea did not arise until the Supreme Court decided Padilla v. Kentucky, 559 U.S. 356 (2010); Padilla, however, is not retroactive." Chaidez v. United States, 133 S. Ct. 1103, 1113 (2013)." ECF No. 37 at 19.

2

order to avoid deportation.[4]  See ECF No. 55 at 16-17.[5]  Petitioner asserts that his fraud conviction constitutes an "aggravated felony" for immigration purposes which renders him ineligible for relief from removal.[6]  ECF No. 37 at 9.  He is therefore facing "mandatory deportation to Canada" absent relief from this court.  Id.

Following his sentencing hearing, petitioner did not experience any immigration problems until the fall of 2007 when he traveled back to Canada to visit his parents and was questioned by immigration agents about his felony fraud conviction.[7]  ECF No. 37-1 at 6.  According to petitioner, this was the first time that he knew that his felony conviction made him inadmissible to the United States.  Id.  When formal immigration removal proceedings were initiated against him at the beginning of 2008, petitioner hired various attorneys to represent him in immigration court.  ECF No. 37 at 14-15; ECF No. 37-1 at 6-7.  Six years later, "[i]n early 2014, petitioner consulted with a third immigration lawyer who "told [him] for the first time that my health care fraud conviction is considered to be an aggravated felony" which requires mandatory deportation from the United States.  ECF No. 37-1 at 7-8.  Petitioner was counseled at that time to "talk with a post-conviction lawyer to see about challenging the conviction."  ECF No. 37-1 at 8.  In August 2014, petitioner hired new counsel "to determine if there are grounds on which to challenge the legality of my conviction."  Id.

Regarding the more than 11-year delay in filing for coram nobis relief following his conviction, petitioner provides three separate explanations.  See ECF No. 37 at 21-30.  First, petitioner contends that he did not learn of any adverse immigration consequences until

---

[4] See ECF No. 37-5 at 4 (Declaration of Stacy Tolchin explaining why misprision of a felony is not considered a "crime involving moral turpitude" or an "aggravated felony" for immigration purposes.

[5] In the alternative, petitioner requests the court to order an evidentiary hearing to allow petitioner "an opportunity to present evidence in support of his entitlement to relief."  ECF No. 55 at 18.

[6] The parties argue at length about whether the fraud conviction is an "aggravated felony" or a "crime of moral turpitude" as well as whether petitioner is "inadmissible" or "removable" as a matter of immigration law.  However, as petitioner has an immigration hearing in April 2019, this court will leave those issues to another court on another day.  See Castro–O'Ryan v. U.S. Dep't of Immigration and Naturalization, 847 F.2d 1307, 1312 (9th Cir. 1988) (describing immigration laws as "'second only to the Internal Revenue Code in complexity.'" (internal citation omitted).

[7] Prior to this point, petitioner indicates that he traveled to Mexico on two occasions without any immigration problems.  ECF No. 37-1 at 6.

3

November 30, 2007 when he tried to re-enter the United States after visiting his parents in Canada. ECF No. 37 at 21-22. Second, and most importantly, petitioner asserts that the delay between 2008 and 2014 was due to the inadequate representation he received from the first two immigration lawyers he hired to represent him in removal proceedings. ECF No. 37 at 24-29. He argues that he was "lull[ed] into believing that relief from deportation was available" based on the actions of these attorneys. Id. at 29. Petitioner also indicates that neither of these immigration attorneys told him that he should challenge his criminal conviction in order to avoid deportation. ECF No. 37-1 at 6-8. Lastly, petitioner suggests that the legal basis for his coram nobis petition was "unclear" from February 2013 to July 2015 due to questions concerning retroactivity. ECF No. 37 at 30 n. 6; ECF No. 57 at 6-7.

The government filed an opposition to the coram nobis petition on June 15, 2016 arguing that the petition is untimely because petitioner fails to establish valid reasons for not attacking his conviction earlier. ECF No. 41 at 20-24 (citing Hirabayashi, 828 F.2d at 604); see also United States v. Riedl, 496 F.3d 1003, 1006-07 (9th Cir. 2007). As support for this position, the government notes that petitioner "knew that there were potential immigration consequences on the day of his change of plea in 2003 when the judge warned him not once but twice that he was pleading guilty to a crime that could have immigration consequences." ECF No. 41 at 21. The government also submits that the coram nobis petition is barred by laches based on inexcusable delay and prejudice. Id. at 24-26 (citing Telink, Inc. v. United States, 24 F.3d 42, 45 (9th Cir. 1994)). Specifically, the government asserts that it is prejudiced due to the death of attorneys who advised petitioner before he entered his guilty plea and in its ability to retry the case due to spoliation of evidence. ECF No. 41 at 25-27. Additionally respondent contends that petitioner's case does not involve a justiciable case or controversy because there is no current deportation order. ECF No. 41 at 27-31.

In supplemental briefing ordered by the court, respondent argued for the first time that the instant petition is barred by the collateral attack waiver in petitioner's guilty plea. ECF No. 56 at 9-12. In response, petitioner argued that respondent waived any challenge that petitioner's collateral attack waiver in his plea agreement bars coram nobis relief because the government

4

failed to raise this defense in its initial responsive pleading. ECF No. 55 at 7-10.

**II.     Jurisdiction**

Based on the fact that petitioner is no longer in custody, the court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and the All Writs Act codified at 28 U.S.C. § 1651.

**III.    Legal Standards**

**A. Coram Nobis Petition**

The extraordinary writ of coram nobis is available when the following four requirements are satisfied: "(i) a more usual remedy is not available; (ii) valid reasons exist for not attacking the conviction earlier; (iii) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III, and (iv) the error is of the most fundamental character."[8] Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987); see also United States v. Kwan, 407 F.3d 1005, 1011 (9th Cir. 2005); Matus-Leva v. United States, 287 F.3d 758, 760 (9th Cir. 2002). In reviewing a motion for coram nobis relief, a federal court is required to hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." See 28 U.S.C. § 2255(b); United States v. Taylor, 648 F.2d 565, 573, n. 25 (stating that "[w]hether a hearing is required on a coram nobis motion should be resolved in the same manner as habeas corpus petitions."); see also United States v. Zuno–Arce, 339 F.3d 886, 889 (9th Cir. 2003). In deciding whether a § 2255 movant is entitled to an evidentiary hearing, the district court should determine whether, accepting the truth of movant's factual allegations, he could prevail on his claim. United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994). The court may deny an evidentiary hearing on a § 2255 motion "if the petitioner's allegations, viewed against the record, fail to state a claim or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'" United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996) (citations omitted). The court will use these same principles in reviewing petitioner's allegations in the coram nobis petition and in resolving whether an

---

[8] In United States v. Morgan, 346 U.S. 502, 511 (1954), the Supreme Court characterized the writ of coram nobis as an "extraordinary remedy" that should be granted "only under circumstances compelling such action to achieve justice."

5

evidentiary hearing is required in the instant case. See Taylor, 648 F.2d at 573 n. 25.

### B. Ineffective Assistance of Counsel

Petitioner alleges that he was denied the effective assistance of counsel after pleading guilty but prior to sentencing. The Supreme Court enunciated the standards for reviewing ineffective assistance of counsel claims in Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The court must then determine, whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. Second, in order to be entitled to relief, a defendant must affirmatively demonstrate prejudice resulting from counsel's alleged errors. Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also United States v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985); United States v. Schaflander, 743 F.2d 714, 717-718 (9th Cir. 1984) (per curiam).

### IV. Petitioner's Collateral Attack Waiver in His Plea Agreement

As a preliminary matter, the court turns first to the issue of whether the coram nobis petition is barred by petitioner's collateral attack waiver in his plea agreement.[9] The court hereby finds that respondent has waived this affirmative defense by failing to raise it in its initial responsive pleading filed on June 15, 2016. See Morrison v. Mahoney, 399 F.3d 1042, 1046 (2005) (concluding that the affirmative defense of procedural default can be waived by the government if it is not raised in its first responsive pleading to a habeas corpus petition); Nardi v.

---

[9] The right to appeal or to seek collateral relief from a conviction may be waived in a plea agreement. See United States v. Lo, 839 F.3d 777, 783 (9th Cir. 2016); United States v. Portillo-Cano, 192 F.3d 1246, 1249 (9th Cir. 1999). In this case, petitioner agreed to "waive his right to appeal his conviction and the sentence imposed by the court, and further agrees to waive his right to make any collateral attack on any aspect of the proceedings, including sentencing." ECF No. 37-7 at 3.

6

Stewart, 354 F.3d 1134, 1141 (9th Cir. 2004) (holding that the government had waived the statute of limitations defense by not raising it in its first responsive pleading), overruled on other grounds by Day v. McDonough, 547 U.S. 198, 209 (2006). Only after supplemental briefing on this issue was ordered by the court did respondent seek to assert that the collateral attack waiver precluded relief on the pending coram nobis petition. ECF No. 56 at 12. However, the only reference that respondent points to in support of its argument that the waiver was not waived is the procedural history section of its opposition to the petition. See ECF No. 41 at 8. The collateral attack waiver was not mentioned as a basis to dismiss the coram nobis petition in the government's opposition. See ECF No. 41 at 14-26. On this record, the court will not rely on the collateral attack waiver to dismiss petitioner's coram nobis application.

### V.     Coram Nobis Relief

The court will address the four-prong standard petitioner is required to demonstrate in order to justify coram nobis relief, although the factors are discussed out of order for the sake of clarity.

#### A.     A More Usual Remedy Is Not Available

As the parties do not dispute the first factor, the court finds that "a more usual remedy is not available" to petitioner to challenge his fraud conviction. Chan, 792 F.3d at 1153; Hirabayashi, 828 F.2d at 604; see also 28 U.S.C. § 2255(a) (stating that a prisoner must be in custody under a sentence at the time of filing a motion to vacate, set aside or correct the sentence); Maleng v. Cook, 490 U.S. 488, 490-91 (1989) (holding that a habeas petitioner was not "in custody" after the sentence has fully expired); United States v. Kwan, 407 F.3d 1005, 1012 (9th Cir. 2005) (stating that "Kwan satisfied the first requirement… by establishing that he is not in custody and, as a result, not eligible for habeas relief of § 2255 relief."). Accordingly, the first prong for coram nobis relief has been satisfied.

#### B.     Adverse Consequences from Petitioner's Criminal Conviction

An additional prong of coram nobis relief requires petitioner to demonstrate adverse consequences resulting from the criminal conviction in order to satisfy the case of controversy requirement of Article III. See Hirabayashi, 828 F.2d at 604. Respondent argues that there is no

case or controversy at present because the immigration court has not yet issued an order for petitioner's deportation. However, the adverse consequences need only be "possible" in order to satisfy the case or controversy requirement. See United States v. Walgren, 885 F.2d 1417, 1421-22 (9th Cir. 1989) (discussing the possible future adverse consequences stemming from a single felony conviction "left standing."). Moreover, the possibility of deportation is sufficient to establish a case or controversy. See United States v. Kwan, 407 F.3d at 1014 (citing Park v. California, 202 F.3d 1146, 1148 (9th Cir. 2000); United States v. Escogbue, 357 F.3d 532, 534 (9th Cir. 2004)). Thus, the court concludes that there is a sufficient case or controversy in this case based on petitioner's pending removal proceedings and his possible deportation.

### C. Reasons for Not Attacking the Conviction Earlier

Respondent seeks dismissal of the present coram nobis petition in large part due to petitioner's delay of over 11 years in seeking coram nobis relief. As explained earlier, coram nobis relief is only available if "valid reasons exist for not attacking the conviction earlier" and petitioner bears the burden of justifying his delay. See Hirabayashi, 828 F.2d at 604; Kwan, 407 F.3d at 1014 ("The law does not require [petitioner] to challenge his conviction at the earliest opportunity, it only requires [petitioner] to have sound reasons for not doing so."); United States v. Riedl, 496 F.3d 1003, 1007–08 (9th Cir. 2007).

In this case, petitioner's claim for which he seeks relief is based on his post-plea counsel's misadvice concerning the immigration consequences of his guilty plea to Health Care Fraud. According to petitioner, post-plea counsel told him that the immigration authorities would not find out about his health care fraud conviction if he paid his restitution prior to sentencing and was given probation instead of jail time. See ECF No. 37-1 at 5. The court finds that petitioner did not have a valid reason for challenging the accuracy of this advice until the fall of 2007 when he was questioned by immigration inspectors who specifically asked him about this fraud conviction. See ECF No. 37-11 at 1 (Order to Appear following Deferred Inspection). At this point in time, petitioner knew that his post-plea attorney's advice was erroneous because the immigration authorities discovered his fraud conviction by running his fingerprints through IAFIS. Id.

However, it was not until approximately 7 years later, in August 2014, when petitioner retained legal counsel for the specific purpose of determining "if there are grounds on which to challenge the legality" of his fraud conviction. ECF No. 37-1 at 8. While petitioner seeks to explain this 7-year delay on the poor advice he received from two immigration lawyers, the court notes that this is not a situation in which either lawyer advised petitioner that he could not challenge his criminal conviction. See Kwan, 407 F.3d at 1013. Instead, petitioner argues that he was "lull[ed] into believing that relief from deportation was available." ECF No. 37 at 29.

That argument misses the mark because petitioner already knew that his post-plea counsel's advice was erroneous. Neither of his immigration attorneys prevented him from pursuing his IAC claim, which is the basis of his coram nobis petition. Accordingly, this case is not similar to Kwan in which that petitioner was affirmatively advised by counsel not to file a habeas corpus challenge to his conviction. See Kwan, 407 F.3d at 1013. This case is also dissimilar to Kwan because this petitioner had "reason to conclude that his criminal defense counsel had in fact erred and affirmatively misled him," Kwan, 407 F.3d at 1014, once immigration authorities questioned him about his fraud conviction in the fall of 2007. See ECF No. 37-1 at 6. Whereas the criminal defense attorney in Kwan told him that there was "no serious possibility" that his conviction would cause him to be deported, in petitioner's case, post-plea counsel said that "the immigration authorities would never find out about the conviction and nothing would happen as a result of it." ECF No. 37-1 at 5. In light of these distinctions from the Kwan case, the court finds that the poor advice from petitioner's immigration lawyers from 2008 until 2014 is not a valid reason for not attacking his fraud conviction earlier. While petitioner's explanations for his delay revolve around when he learned that his fraud conviction constituted an aggravated felony, the legal issue before this court is when he became aware of the ineffectiveness claim against his post-plea counsel and whether there were valid reasons for not raising that claim earlier. Framed in this light, petitioner's explanations for the delay based on his immigration lawyers' advice are not sufficient to warrant coram nobis relief.

This conclusion is further supported by the Ninth Circuit decision in United States v. Riedl, 496 F.3d 1003 (9th Cir. 2007). The petitioner in Riedl waited more than 6 years to file her

coram nobis petition raising a vagueness challenge to the money laundering statute under which she was convicted as well as a sufficiency challenge to the evidence against her. The Ninth Circuit found that this delay was not excused by her incarceration, deportation to Austria, diminished mental capacity, or the time it took her "to find competent counsel willing to review her case and pursue her legal remedies…." Id. at 1005. The Court of Appeal reviewed these factors both individually and in combination and concluded that Riedl "failed to provide any valid reasons for waiting so long to challenge her convictions on these grounds…." Id. at 1004. In so doing, the Court of Appeal emphasized that there was no legal impediment to presenting the underlying claims earlier via a direct appeal or a 28 U.S.C. § 2255 motion. Id. at 1006.

In this case, petitioner's ineffective assistance of counsel claim was available in 2005, the same year that he was sentenced. See Kwan, 407 F.3d 1005. Petitioner merely argues that there became a question about the retroactive application of Kwan after Chaidez v. United States, 133 S. Ct. 1103 (2013), was decided by the Supreme Court and before United States v. Chan, 792 F.3d 1151 (9th Cir. 2015), was decided by the Ninth Circuit. However, the legal basis for petitioner's Kwan claim was not in dispute between 2005 and 2013. Thus, this is not a situation like Walgren, where the delay in filing a coram nobis petition was due to a recent change in the law that was made retroactive. See Walgren, 885 F.2d at 1421. Accordingly, this court finds that the lack of clarity in the retroactive application of the Kwan decision is not a valid reason for not filing petitioner's coram nobis petition earlier. See Garcia v. United States, No. CR 97–022 MEJ, 2012 WL 5389908, *7 (N.D. Cal. Nov.5, 2012) (finding a 15–month delay in filing a coram nobis petition after the Court decided Padilla unreasonable).

To summarize, this court finds that the files and records of this case conclusively demonstrate that petitioner is not entitled to coram nobis relief, or an evidentiary hearing thereon, because he has failed to demonstrate a valid reason for not attacking his fraud conviction earlier. Because the court has determined that petitioner has not demonstrated valid reasons for not challenging his conviction earlier, the respondent's defense of laches is moot. See United States v. Riedl, 496 F.3d at 1008-09 (reaffirming "the Hirabayashi framework and hold[ing] that the burden remained on Riedl to demonstrate that her delay was reasonable" and emphasizing that

10

the defense of laches is distinct from the second coram nobis requirement of timeliness).

**D. An Error of the Most Fundamental Character**

In light of the court's finding that petitioner lacks valid reasons for not attacking his conviction earlier, it is unnecessary to decide whether he meets the fundamental error requirement based on the ineffective assistance of his post-plea counsel. See Hirabayashi, 828 F.2d at 604.

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for an expedited ruling (ECF No. 48) is denied as moot.

IT IS FURTHER RECOMMENDED that petitioner's motion for a writ of error coram nobis (ECF No. 37) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time waives the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 4, 2019

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/kroy0379.coramnobis.docx

11